UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN OBUCH,                                    Case No. 07-15270

            Plaintiff,                    Paul D. Borman
v.                                               United States District Judge

COMMISSIONER OF                                  Michael Hluchaniuk
SOCIAL SECURITY,                                 United States Magistrate Judge

            Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 17)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On December 11, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Paul D. Borman referred this matter to Magistrate Judge Virginia M. Morgan for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability, disability insurance benefits, and Supplemental Security

Income benefits.  (Dkt. 3).  On January 15, 2008, this matter was reassigned to the

undersigned.  (Dkt. 5).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 12, 17).

B.    Administrative Proceedings

Plaintiff filed the instant claims on August 27, 2003, alleging that he became unable to work on January 15, 2000.  (Tr. at 42).  The claim was initially disapproved by the Commissioner on March 29, 2004.  (Tr. at 23-27).  Plaintiff requested a hearing and on June 16, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) David R. Mazzi, who considered the case *de novo*.  In a decision dated January 19, 2007, the ALJ found that plaintiff was not disabled.  (Tr. at 13-21).  Plaintiff requested a review of this decision on February 5, 2007.  (Tr. at 10-12).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, 2 and 3, Tr. at 8), the Appeals Council, on November 23, 2007, denied plaintiff's request for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

review.  (Tr. at 5-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 39 years of age at the time of the most recent administrative hearing.  (Tr. at 42).  Plaintiff's relevant work history included approximately seven years as an oil worker, video counter clerk, automotive mechanic, packer and laborer (Tr. at 55).  In denying plaintiff's claims, defendant Commissioner considered rheumatoid arthritis and osteoarthritis as possible bases of disability. (Tr. at 17).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 15, 2000.  (Tr. at 17).  At step two, the ALJ found that plaintiff's disorders were "severe" within the meaning of the second sequential step.  *Id*.  At step three,

the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that plaintiff could not perform his previous work. (Tr. at 19). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 21). Specifically, the ALJ found, using expert vocational testimony, that plaintiff retained the ability to perform light work, but was required to use a cane, needs a sit or stand option every ten minutes and is limited to occasional bending, stooping, crouching, kneeling or crawling. (Tr. at 17).

The ALJ noted that, on November 8, 2000, plaintiff had filed earlier applications under Title II and Title XVI, which were denied on March 15, 2001. (Tr. at 17). The ALJ found no basis to reopen and revise the prior adverse determinations and concluded that they remained administratively final and binding. (Tr. at 17). Plaintiff's earnings record shows that he met the insured status requirement on January 15, 2000 and remained insured for Title II disability benefit purposes through June 30, 2006. (Tr. at 17). The ALJ concluded that the medical evidence established that plaintiff was diagnosed rheumatoid arthritis and osteoarthritis and that these medically-established disorders have more than a minimal effect on the capacity for basic work functions and are, therefore,

"severe."  The ALJ concluded, however, that the clinical and laboratory findings did not meet or equal any listed impairment.  (Tr. at 17).

The record includes progress notes from December 2001 through September 2003 from Bethany K. Hoffman, M.D., and from January 2005 through June 2006 from a medical facility associated with the Veterans Administration. Through Dr. Hoffman, plaintiff was evaluated by Rory Marks, M.D., who issued a report in April of 2001.  Plaintiff also underwent consultative evaluation by Michael J. Simpson, M.D., who issued a report on February 21, 2004.  The medical records show a history of July 2000 aspiration and steroid injections for the right knee.  When seen in January 2001, plaintiff had a small amount of intra-articular fluid in the right knee.  In April 2003, the examination disclosed effusion, warmth and tenderness in the right knee.  Continuing examinations showed limited motion in the right knee on flexion, swelling, recurrent synovitis and effusion, an antalgic gait and a mild limp.  In February 2004, plaintiff had a slight synovial thickening of the second and third PIP joints of both hands, although plaintiff retained good grip strength and dexterity.  X-ray reports from June 2001 of the lumbar spine, sacroiliac joints and knees were unremarkable. Subsequently, an x-ray report from October 2005 shows partite left patella and possible joint effusion of the left knee.  In April 2001, Dr. Marks diagnosed

plaintiff with a history and symptoms consistent with "seronegative arthropathy."
Dr. Simpson diagnosed plaintiff with multiple arthralgias.  In October 2005, the
evaluating physician at the Veterans Administration facility diagnosed plaintiff
with an inflammatory arthritic condition of the knees, recurrent synovitis, and
effusion.  The ALJ noted that although laboratory findings had been negative, the
medical consensus appeared to be that plaintiff suffered from an inflammatory
arthritic condition, mainly affecting his knees.

As a result of the arthritis in the knees, the ALJ observed that plaintiff was
limited in his ability to stand and walk.  In determining the extent to which
plaintiff was able to stand and walk, the ALJ considered that his daily activities
showed an ability to walk, albeit with a cane and a limp.  Further, plaintiff was
able to drive, performed household chores with assistance, and shopped, which the
ALJ found to be consistent with an ability to stand and walk on a limited basis.
And, while plaintiff had undergone an aspiration and steroid injections for his
knee in the past, the ALJ noted an absence of evidence that plaintiff continued to
receive such treatment.  The ALJ also noted that plaintiff's current treatment
regimen was conservative and that x-rays disclosed no serious bony or joint
destruction.  Thus, the ALJ concluded that plaintiff's knee impairment was not so

serious as to prevent him from standing or walking for up to six hours in an eight-hour day, with a sit or stand option every 10 minutes.

The ALJ found evidence of arthritic changes in plaintiff's fingers that, together with the arthritis in his knees, diminished his capacity to lift and carry. Conservative treatment showed that plaintiff was symptomatic, but the ALJ concluded that he was not limited to the degree that prevented him from lifting up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently, as required for light work. The ALJ pointed out that plaintiff's examinations have not shown limitations to manual grip and dexterity, that diminished his functional capacity to less than otherwise found. As a result of his general arthritic symptoms in his back, knees and ankles, the ALJ concluded that plaintiff was limited to occasional bending, stooping, crouching, crawling and crawling. To avoid stiffness and pain from prolonged positioning, and in light of his standing and walking limitations, the ALJ found that plaintiff required a sit or stand option every ten minutes.

The ALJ declined to rely on the March 2004, state agency evaluation because there was additional evaluation and treatment showing that plaintiff's functional capacity had diminished since that time and the ALJ found that the state agency did not adequately consider his subjective complaints. The ALJ noted that

Report and Recommendation
Cross-Motions for Summary Judgment
*Obuch v. Comm'r*; No. 15270

plaintiff's treating source records were essentially consistent with his RFC findings. Notably, the ALJ concluded that plaintiff would be found not disabled even if he were limited to sedentary work with the additional restrictions, in light of his relatively young age.

With respect to plaintiff's subjective complaints, the ALJ found that there were medically established disorders to account for the type of symptoms claimed, but that the severity of symptoms claimed was not entirely credible. Plaintiff complained of chronic pain, swelling and stiffness in his ankles and knees and described flare-ups occurring every two to three weeks and lasting three to seven days at a time. Plaintiff stated that he spent about three days in bed about two times per month. He also complained that his pain limited him to standing and walking for "no more than ten minutes and lifting or carrying no more than ten pounds." While the ALJ noted that there were "abnormal medical signs," he found that the medical treatment and findings did not support plaintiff's reported limitations. Significantly, treatment had been conservative and was not the aggressive type generally associated with more severe symptoms. While plaintiff was seen on a continuing basis by his physician, "contact has been mainly to renew or refill his medications." In February 2005, the treating physician at the Veterans Administration medical facility indicated that plaintiff's pain was

"tolerable as long as he takes his medications."  Further, plaintiff's daily activities included household chores, shopping, and driving, which were not inconsistent with the ALJ's RFC findings.

The ALJ also found it significant that the medical evidence since the alleged onset date of disability had not significantly changed, yet plaintiff was able to work for about three months as a landscaper.  The ALJ found that the ability to perform this type or work, even for a few months, was inconsistent with greater limitations than those found by the ALJ.  The ALJ also found it significant that plaintiff was able to perform work lifting up to 50 pounds until his alleged disability onset, with no significant traumatic injury, which was indicative of an ability to perform work within the significantly more restrictive functional capacity found by the ALJ.  Based on the foregoing, the ALJ was not persuaded that the alleged intensity, persistence, and functionally limiting effects of plaintiff's subjective complaints were fully credible.

B.   Parties' Arguments

1.   Plaintiff's claims of error

Plaintiff argues that he does not have the capacity to stand and walk for six of eight hours due to his documented arthritis of the knees and other joints.  He points to Social Security Ruling 83-10, which provides that, since frequent lifting

or carrying requires a person to be on his feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  Plaintiff also argues that the need to sit every 10 minutes, as found by the ALJ, was not consistent with the performance of light work activity.

Plaintiff also argues that the ALJ failed to include adverse side effects from his prescription medications, which include Oxycontin, Ultram and Vicodin. Plaintiff suggests that the side effects of his prescription pain medications would interfere with his ability to satisfactorily perform work in a competitive work setting.  He points out that the vocational expert (VE) confirmed that the listed occupations of office clerk and information clerk required an employee to maintain attention, concentration, persistence and pace throughout the majority of the workday.  Plaintiff relies on excerpts from the Physician's Desk Reference to support his claim that medication side effects would preclude him from working. (Ex. AC-1; Tr. at 198-212).

To support his claim that the ALJ failed to give proper weight to an opinion and assessment of a treating physician, plaintiff relies on a May 22, 2007 letter from Dr. Bash, one of his treating physicians, who treated the plaintiff for several years for rheumatoid arthritis and osteoarthritis.  Dr. Bash wrote that plaintiff

Report and Recommendation
Cross-Motions for Summary Judgment
*Obuch v. Comm'r*; No. 15270

"takes high doses of pain medications to control his pain. He has had several bouts of knee swelling in the past. Minimal activity seems to aggravate his problems . . . I do not feel that he is employable." (Ex. AC-3; Tr. at 216).

Plaintiff also takes issue with the ALJ's credibility determination. He argues that the ALJ failed to consider that he performed his household chores at his "own pace" due to pain. Plaintiff suggests that a claimant's ability to perform simple functions such as driving, grocery shopping, dish washing, and floor sweeping does not necessarily indicate an ability to perform substantial gainful activity. (Dkt. 12, p. 17, citing, *Walston v. Gardner*, 381 F.2d 580, 585-586 (6th Cir. 1987); *Polly v. Gardner*, 364 F.2d 969, 974 (6th Cir. 1966)).

Plaintiff also argues that the hypothetical question posed to the VE was defective because it did not include plaintiff's need to elevate his legs to seat height, did not include any of the plaintiff's testimony about his problems using his hands due to cramping, numbness, swelling and pain, and did not include the documented side effects from the plaintiff's prescription pain medications. Accordingly, plaintiff argues that the VE's testimony cannot constitute substantial evidence.

2.      Commissioner's counter-motion for summary judgment

The Commissioner urges the Court to reject plaintiff's argument that the ALJ's finding that he could stand and walk for six hours in an eight-hour workday is not supported by substantial evidence.  (Dkt. 17).  The Commissioner submits that the ALJ specifically accounted for plaintiff's limited ability to walk by restricting him to work that allowed him to sit or stand every ten minutes and that allowed for the use of a cane.  (Dkt. 17, citing, Tr. at 18).  According to the Commissioner, the ALJ also accommodated plaintiff's limitations of walking with a cane and a limp and reasonably noted that plaintiff was still able to drive, perform household activities, and shop, which reflected the ability to walk for at least 10 minutes at a time.  (Dkt. 17, citing, Tr. at 18).  The Commissioner also points out that the ALJ reasonably considered that, while plaintiff had received steroid injections to treat his knee, there was no evidence that he had done so in several years, suggesting that the swelling in his knees was not as severe or as frequent as he alleged.  (Dkt. 17, citing, Tr. at 18).  The ALJ also considered that plaintiff was treated with medication only and that x-rays failed to show any serious bony or joint destruction.  (Dkt. 17, citing, Tr. at 18).  Thus, the Commissioner suggests that the ALJ's findings as to plaintiff's limitation in standing and walking is supported by substantial evidence and should be affirmed.

Report and Recommendation
Cross-Motions for Summary Judgment
*Obuch v. Comm'r*; No. 15270

The Commissioner also urges the Court to reject plaintiff's argument that the need to sit every 10 minutes is not consistent with the performance of a full range of light work activity. The Commissioner points out that the ALJ did not find that plaintiff could perform a *full range* of light work; rather, he specifically found plaintiff had the RFC for only a *reduced range* of light work. (Dkt. 17).

Next, the Commissioner argues that substantial evidence supports the ALJ's credibility determination. Again, while plaintiff reported receiving injections and drainage procedures, the medical records failed to show that these procedures had been performed in the recent past. Rather, plaintiff's condition was primarily treated with medication throughout much of his claimed period of disability. (Dkt. 17, citing, 20 C.F.R. § 404.1529(c)(3)(v); *Villarreal v. Sec'y of Health and Hum. Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (ALJ reasonably relied on plaintiff's "conservative treatment" in assessing credibility)).

The Commissioner also argues that the Court should reject plaintiff's claim that the ALJ failed to consider medication side effects because plaintiff fails to cite any of his own complaints to his doctors regarding these medications and the medical records fail to reveal any ongoing complaints of side effects from plaintiff's medications. (Dkt. 17, citing, Tr. at 157, 174, *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of

Report and Recommendation
Cross-Motions for Summary Judgment
*Obuch v. Comm'r*; No. 15270

medication, and it should not be viewed as disabling unless the record references serious functional limitations.")). The only time plaintiff complained about ongoing side effects from his Oxycontin, Vicodin, and Lodine was during his testimony at the administrative hearing. (Dkt. 17, citing, Tr. at 224). The Commissioner concedes that the ALJ should have mentioned this testimony in his decision, but asserts that his failure to discuss this unsubstantiated complaint was harmless error. (Dkt. 17, citing, *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) ("...there was no evidence in the record that he told his doctors that his medication made his drowsy.")).

The Commissioner argues that the ALJ could reasonably consider that the ability to perform household chores and other activities of daily living was inconsistent with plaintiff's testimony that he had extreme, disabling limitations (Dkt. 17, citing, Tr. at 223; *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks.")). The Commissioner argues that the ALJ reasonably considered many other factors to support his credibility findings, such as the medical evidence, the lack of aggressive treatment, doctors' notes that plaintiff's pain was tolerable as long as he took his medication, and the fact that plaintiff's doctors visits mostly centered

around renewing or refilling his prescriptions.  (Dkt. 17, citing, Tr. at 19).

According to the Commissioner, the ALJ also reasonably considered that most of

the treatment notes showed relatively normal objective findings, despite plaintiff's

complaints of chronic pain, swelling, and stiffness, and his examinations showed

no evidence of joint instability along with relatively infrequent swelling.  (Dkt. 17,

citing, Tr. 19, 118, 140, 184, 179, 174).  Although Plaintiff complained of

disabling swelling and weakness in his hands, the consultative examination

showed that his grip strength was intact, his dexterity was unimpaired and that he

was able to pick up a coin, button clothing, and open a door without difficulty.

(Dkt. 17, citing, Tr. at 140).  Thus, according to the Commissioner, the ALJ could

reasonably conclude that, while plaintiff had occasional flare-ups of his arthritis

symptoms, they were not of such a severity or frequency so as to preclude his

performance of a limited range of light work.

The Commissioner also asserts that the ALJ gave appropriate weight to Dr.

Bash's opinion because it concerns an issue that is reserved for the ALJ, namely

that of disability.  (Dkt. 17, citing, 20 C.F.R. § 404.1527(e) (An opinion that you

are disabled is not a medical opinion, but rather an opinion on an issue reserved to

the Commissioner, and it is not entitled to any particular weight.)).  Further, the

Commissioner points out that, while Dr. Bash indicated that "minimal activity

seems to aggravate his problems . . . ," he was referring to plaintiff's own subjective complaints rather than his medical opinion.  (Dkt. 17, citing, Tr. at 166).

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

Report and Recommendation
Cross-Motions for Summary Judgment
*Obuch v. Comm'r*; No. 15270

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefit programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

        2.     Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

        C.    <u>Analysis and Conclusions</u>

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 21). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity
> or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of
> exertion, periods of standing or walking should generally
> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday.  Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

After review of the record, I conclude that the ALJ utilized the proper legal

standard in his application of the Commissioner's five-step disability analysis to

plaintiff's claim.

      1.    Treating physician evidence

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  _Wilson_, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  _Dent v. Astrue_, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams*

*v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

 In this case, the Court cannot consider the 2007 letter from Dr. Bash. *See*

note 1, *supra*. In May 2006, Dr. Bash opined as follows:

> Steven Obuch has been a patient of mine for the last
> several months. For several years he has had pain in his
> knees and, according to Steven, when his knees swell, he
> is unable to do his usual activities. He has been seen by
> specialists and is currently taking opiate pain medication.

(Tr. at 166). Dr. Bash's "opinion" is nothing more than a vague recitation of

plaintiff's self-reported symptoms. Additionally, there is no indication that Dr.

Bash reviewed plaintiff's medical records from the "several years" before he

began treating him and thus there is no indication that Dr. Bash has a basis to even

render an opinion for an earlier time period. Further, there is no evidence in Dr.

Bash's treatment notes, or the notes of any other physician who treated plaintiff,

regarding plaintiff's specific or general functional limitations. *See Maher v. Sec'y*

*of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v.*

*Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions

constitutes substantial evidence for a finding of non-disability."). Rather, Dr.

Bash's records, along with plaintiff's other records, merely show ongoing treatment with pain medication for his arthritic condition. Plaintiff's claim is ground primarily on the mere existence of his condition, rather than on any resulting impairments or specific restrictions. This is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms."). Based on the foregoing, the undersigned suggests that there was substantial evidence in the record supporting the weight given to Dr. Bash's opinion.

2.    Medication side effects

Plaintiff relies on excerpts from the PDR to support his claim that he suffered from medication side effects that the ALJ failed to consider. (Ex. AC-1;

Tr. at 198-212).  The Court cannot consider this evidence.  *See* note 1, *supra*.  The

undersigned suggests that even if the Court did consider the PDR excerpts,

plaintiff's claim of medication side effects has no basis whatsoever in the record

and should be rejected.  Plaintiff does not point to a single instance where he

complained of drowsiness/sleepiness as a medication side effect to any physician,

which was his complaint at the hearing.  (Tr. at 224).  On his adult disability

report, plaintiff only complained about nausea as a side-effect of his medications.

(Tr. at 67).  Further, plaintiff reported "no" medication side effects to the VA

physician.  (Tr. at 157-158).

"Allegations of a medication's side effects must be supported by objective

medical evidence." *Daniels v. Comm'r of Soc. Sec.*, 2008 WL 4394356 (W.D.

Mich. 2008), citing, *Farhat v. Sec'y of Health and Hum. Servs.*, 1992 WL 174540,

*3 (6th Cir. 1992)*; *Bentley v. Comm'r of Soc. Sec.*, 2001 WL 1450803, *1 (6th

Cir. 2001)* (noting absence of reports by treating physicians that claimant's

"medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health and

Hum. Servs.*, 1993 WL 291301, *7 (6th Cir. 1993)* (no objective medical evidence

supported claimant's allegation that medication made him so drowsy he could not

work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record

that claimant told his doctors that the medication made him drowsy); *Swindle v.*

*Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant); *see also* *Cross v. Comm'r of Soc. Sec.*, 2008 WL 5071714, *6 (W.D. Mich. 2008).  Based on the foregoing, the undersigned suggests that because there is no evidence whatsoever in the record supporting plaintiff's claim regarding debilitating medication side effects, which is required, the ALJ's failure to directly address this issue in his decision was harmless error.

### 3.   Credibility and hypothetical question

The undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding.  As noted above, a severe impairment does not equate to disability.  *Howard, supra*; *Yang, supra*; *Griffeth, supra*.  The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999

WL 98645, *3 (6th Cir. 1999).  An ALJ's findings based on the credibility of an

applicant are to be accorded great weight and deference, particularly since the ALJ

is charged with the duty of observing a witness's demeanor and credibility.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ reasonably concluded that plaintiff's claims were not entirely

credible for several reasons.  While the ALJ noted that there were "abnormal

medical signs" in the medical records, he found that the medical treatment and

findings did not support plaintiff's reported limitations.  For example, treatment

had been conservative and was not the aggressive type generally associated with

more severe symptoms.  And, while plaintiff was seen on a continuing basis by his

physician, "contact has been mainly to renew or refill his medications."  In

February 2005, plaintiff reported that his pain was "tolerable as long as he takes

his medications."  (Tr. at 182).  The ALJ also found it significant that the medical

evidence since the alleged onset date of disability had not significantly changed,

yet plaintiff was able to work for about three months as a landscaper.  The ALJ

found that the ability to perform this type of work, even for a few months, was

inconsistent with greater limitations than those found by the ALJ.  The ALJ also

found it significant that plaintiff was able to perform work lifting up to 50 pounds

until his alleged disability onset, with no significant traumatic injury, which was

indicative of an ability to perform work within the significantly more restrictive

functional capacity found by the ALJ.  The undersigned finds no basis to disturb

the ALJ's credibility findings.

Moreover, the ALJ  is only required to incorporate the limitations that he

finds credible into a hypothetical question.  *Casey*, 987 F.2d at 1235.  This

obligation to assess credibility extends to the claimant's subjective complaints

such that the ALJ "can present a hypothetical to the VE on the basis of his own

assessment if he reasonably deems the claimant's testimony to be inaccurate."

*Jones*, 336 F.3d at 476.  An ALJ's findings based on the credibility of an applicant

are to be accorded great weight and deference, particularly since the ALJ is

charged with the duty of observing a witness's demeanor and credibility.  *Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  The undersigned

suggests that the ALJ's decision to find plaintiff's claimed limitations to be only

partially credible is supported by the substantial evidence in the record and

properly incorporated into the RFC finding.  Thus, the undersigned finds no basis

for disturbing the ALJ's RFC finding.

### 4.    *Res judicata*

Generally, principles of *res judicata* require that the administration be

bound by this decision unless a change of circumstances is proved on a subsequent

application.  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding... ."  The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."  *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

Given that the earlier decision is not part of the record in this case, the Court cannot assess whether and to what extent the ALJ was bound by any prior determinations or findings.  The earlier decision finding that plaintiff was not disabled could have been based on the conclusion that she could perform her past relevant work or it could have been based on an RFC finding.  Given the undersigned's conclusions that the ALJ properly evaluated the treating physician evidence and properly formulated an RFC grounded in the substantial evidence in the record, whether and to what extent the ALJ *might* have been bound by a prior determination (which plaintiff failed to make part of the record) is immaterial.

5.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 23, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 23, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kenneth F. Laritz, Judith E. Levy, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant