**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN M. OBUCH,

       Plaintiff,                  Civil Case No. 07-CV-15270

vs.                                  JUDGE PAUL D. BORMAN
                                     MAGISTRATE JUDGE MICHAEL

HLUCHANIUK
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN FAVOR OF SUMMARY JUDGMENT, AND (3) DISMISSING THE ACTION**

      Before the Court is Plaintiff Steven M. Obuch's Objections to Magistrate Judge Michael Hluchaniuk's February 23, 2009 Report and Recommendation in favor of granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. Plaintiff filed timely objections on March 4, 2009. Defendant did not respond.

      The Court now reviews the Objections, the Report and Recommendation, and pertinent parts of the record *de novo* pursuant to 28 U.S.C. § 636(b).

**I.    BACKGROUND**

      Because Plaintiff does not object to the facts or procedural history as summarized by Magistrate Judge Hluchaniuk, the Court adopts the relevant portions of the Report and Recommendation here:

           Plaintiff filed the instant claims on August 27, 2003, alleging that he became

1

unable to work on January 15, 2000. (Tr. at 42). The claim was initially disapproved by the Commissioner on March 29, 2004. (Tr. at 23-27). Plaintiff requested a hearing and on June 16, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) David R. Mazzi, who considered the case de novo. In a decision dated January 19, 2007, the ALJ found that plaintiff was not disabled. (Tr. at 13-21). Plaintiff requested a review of this decision on February 5, 2007. (Tr. at 10-12). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits1 (AC-1, 2 and 3, Tr. at 8), the Appeals Council, on November 23, 2007, denied plaintiff's request for review. (Tr. at 5-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

. . .

Plaintiff was 39 years of age at the time of the most recent administrative hearing. (Tr. at 42). Plaintiff's relevant work history included approximately seven years as an oil worker, video counter clerk, automotive mechanic, packer and laborer (Tr. at 55). In denying plaintiff's claims, defendant Commissioner considered rheumatoid arthritis and osteoarthritis as possible bases of disability. (Tr. at 17).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 15, 2000. (Tr. at 17). At step two, the ALJ found that plaintiff's disorders were "severe" within the meaning of the second sequential step. Id. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. Id. At step four, the ALJ found that plaintiff could not perform his previous work. (Tr. at 19). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 21). Specifically, the ALJ found, using expert vocational testimony, that plaintiff retained the ability to perform light work, but was required to use a cane, needs a sit or stand option every ten minutes and is limited to occasional bending, stooping, crouching, kneeling or crawling. (Tr. at 17).

The ALJ noted that, on November 8, 2000, plaintiff had filed earlier applications under Title II and Title XVI, which were denied on March 15, 2001. (Tr. at 17). The ALJ found no basis to reopen and revise the prior adverse determinations and concluded that they remained administratively final and binding. (Tr. at 17). Plaintiff's earnings record shows that he met the insured status requirement on January 15, 2000 and remained insured for Title II disability benefit purposes through June 30, 2006. (Tr. at 17). The ALJ concluded that the medical evidence established that plaintiff was diagnosed rheumatoid arthritis and osteoarthritis and that these medically-established disorders have more than a minimal effect on the capacity for basic work functions and are, therefore, "severe." The ALJ concluded, however, that the clinical and laboratory findings did not meet or equal any listed impairment. (Tr. at 17).

The record includes progress notes from December 2001 through September 2003 from Bethany K. Hoffman, M.D., and from January 2005 through June 2006 from a medical facility associated with the Veterans Administration. Through Dr.

2

Hoffman, plaintiff was evaluated by Rory Marks, M.D., who issued a report in April of 2001. Plaintiff also underwent consultative evaluation by Michael J. Simpson, M.D., who issued a report on February 21, 2004. The medical records show a history of July 2000 aspiration and steroid injections for the right knee. When seen in January 2001, plaintiff had a small amount of intra-articular fluid in the right knee. In April 2003, the examination disclosed effusion, warmth and tenderness in the right knee. Continuing examinations showed limited motion in the right knee on flexion, swelling, recurrent synovitis and effusion, an antalgic gait and a mild limp. In February 2004, plaintiff had a slight synovial thickening of the second and third PIP joints of both hands, although plaintiff retained good grip strength and dexterity. X-ray reports from June 2001 of the lumbar spine, sacroiliac joints and knees were unremarkable. Subsequently, an x-ray report from October 2005 shows partite left patella and possible joint effusion of the left knee. In April 2001, Dr. Marks diagnosed plaintiff with a history and symptoms consistent with "seronegative arthropathy." Dr. Simpson diagnosed plaintiff with multiple arthralgias. In October 2005, the evaluating physician at the Veterans Administration facility diagnosed plaintiff with an inflammatory arthritic condition of the knees, recurrent synovitis, and effusion. The ALJ noted that although laboratory findings had been negative, the medical consensus appeared to be that plaintiff suffered from an inflammatory arthritic condition, mainly affecting his knees.

  As a result of the arthritis in the knees, the ALJ observed that plaintiff was limited in his ability to stand and walk. In determining the extent to which plaintiff was able to stand and walk, the ALJ considered that his daily activities showed an ability to walk, albeit with a cane and a limp. Further, plaintiff was able to drive, performed household chores with assistance, and shopped, which the ALJ found to be consistent with an ability to stand and walk on a limited basis. And, while plaintiff had undergone an aspiration and steroid injections for his knee in the past, the ALJ noted an absence of evidence that plaintiff continued to receive such treatment. The ALJ also noted that plaintiff's current treatment regimen was conservative and that x-rays disclosed no serious bony or joint destruction. Thus, the ALJ concluded that plaintiff's knee impairment was not so serious as to prevent him from standing or walking for up to six hours in an eight-hour day, with a sit or stand option every 10 minutes.

  The ALJ found evidence of arthritic changes in plaintiff's fingers that, together with the arthritis in his knees, diminished his capacity to lift and carry. Conservative treatment showed that plaintiff was symptomatic, but the ALJ concluded that he was not limited to the degree that prevented him from lifting up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently, as required for light work. The ALJ pointed out that plaintiff's examinations have not shown limitations to manual grip and dexterity, that diminished his functional capacity to less than otherwise found. As a result of his general arthritic symptoms in his back, knees and ankles, the ALJ concluded that plaintiff was limited to occasional bending, stooping, crouching, crawling and crawling. To avoid stiffness and pain from prolonged positioning, and in light of his standing and walking limitations, the ALJ found that plaintiff required a sit or stand option every ten

minutes.

The ALJ declined to rely on the March 2004, state agency evaluation because there was additional evaluation and treatment showing that plaintiff's functional capacity had diminished since that time and the ALJ found that the state agency did not adequately consider his subjective complaints. The ALJ noted that plaintiff's treating source records were essentially consistent with his RFC findings. Notably, the ALJ concluded that plaintiff would be found not disabled even if he were limited to sedentary work with the additional restrictions, in light of his relatively young age.

With respect to plaintiff's subjective complaints, the ALJ found that there were medically established disorders to account for the type of symptoms claimed, but that the severity of symptoms claimed was not entirely credible. Plaintiff complained of chronic pain, swelling and stiffness in his ankles and knees and described flare-ups occurring every two to three weeks and lasting three to seven days at a time. Plaintiff stated that he spent about three days in bed about two times per month. He also complained that his pain limited him to standing and walking for "no more than ten minutes and lifting or carrying no more than ten pounds." While the ALJ noted that there were "abnormal medical signs," he found that the medical treatment and findings did not support plaintiff's reported limitations. Significantly, treatment had been conservative and was not the aggressive type generally associated with more severe symptoms. While plaintiff was seen on a continuing basis by his physician, "contact has been mainly to renew or refill his medications." In February 2005, the treating physician at the Veterans Administration medical facility indicated that plaintiff's pain was "tolerable as long as he takes his medications." Further, plaintiff's daily activities included household chores, shopping, and driving, which were not inconsistent with the ALJ's RFC findings.

The ALJ also found it significant that the medical evidence since the alleged onset date of disability had not significantly changed, yet plaintiff was able to work for about three months as a landscaper. The ALJ found that the ability to perform this type or work, even for a few months, was inconsistent with greater limitations than those found by the ALJ. The ALJ also found it significant that plaintiff was able to perform work lifting up to 50 pounds until his alleged disability onset, with no significant traumatic injury, which was indicative of an ability to perform work within the significantly more restrictive functional capacity found by the ALJ. Based on the foregoing, the ALJ was not persuaded that the alleged intensity, persistence, and functionally limiting effects of plaintiff's subjective complaints were fully credible.

(Rep. & Rec. Dkt. No. 19, 2-9).

## II.     ANALYSIS

### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court

conducts a de novo review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

The Court reviews the Commissioner's decision to deny social security benefits under a "substantial evidence" standard:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. [A court's] review is limited to determining whether there is substantial evidence in the record to support its findings. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, [the court] must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. [The court's] role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.

*Wright v. Massanari*, 321 F.3d 611, 614-15 (6th Cir. 2003) (internal citations and quotation omitted).

### B. Plaintiff's Objections

Plaintiff objects to Magistrate Judge Hluchaniuk's Report and Recommendation, arguing that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Specifically, Plaintiff submits four arguments as to why the Commissioner's decision should be overturned. First, Plaintiff argues that his ability to perform limited activity at his own pace for short periods of time does not negate his credibility and does not demonstrate that he could not perform work in a competitive work setting on a regular and consistent basis. Second, Plaintiff submits that the medical evidence does not demonstrate that he "was able to stand or walk up to 6 hours in an 8 hour period." Third, Plaintiff asserts that ALJ's failure to discuss Plaintiff's testimony regarding the side effects of his medication was not harmless error, as the Magistrate Judge

5

concluded. Fourth, Plaintiff contends that the ALJ did not make a specific finding of how frequent the Plaintiff's condition flared.

### 1.     Daily Activities

The ALJ noted Plaintiff's daily activities on two occasions. First, the ALJ states that "[i]n determining the extent to which [Plaintiff] is able to stand and walk, I considered that his daily activities reflect the ability to walk, albeit with a cane and a limp. He is able to drive, perform household chores with assistance and shop, which is consistent with an ability to stand and walk *on a limited basis*." (Tr. 18) (emphasis added). In addition, when reviewing Plaintiff's subjective complaints of pain, the ALJ noted that Plaintiff's "daily activities include household chores, shopping and driving, which are not inconsistent with the findings herein." (Tr. 19). Contrary to what Plaintiff would like the Court to believe, the ALJ did not base its finding of no disability solely on Plaintiff's ability to perform daily activities. The ALJ merely used his performance of daily activities as one of many factors in finding that Plaintiff was not disabled. Accordingly, the Court denies Plaintiff's objection regarding the ALJ's analysis of Plaintiff's daily activities.

### 2.     Medical Evidence

Plaintiff also argues that the medical evidence does not establish that he was able to stand or walk up to six hours in an eight hour period. Plaintiff does not point to any specific evidence supporting this assertion. Even if Plaintiff had, however, Plaintiff did not fully cite the ALJ's finding. Although the ALJ found that the medical evidence indicated that Plaintiff was able to stand or walk up to six hours in an eight hour period, the ALJ also allowed a sit or stand option every ten minutes. Therefore, the ALJ's finding was not nearly as demanding as Plaintiff would like the Court to believe.

### 3.     Side of Effects of Pain Medication

6

Plaintiff next argues that the ALJ did not take into account the side of effects of Plaintiff's medication in making the disability determination and that the case should be remanded so that the ALJ can properly make a determination of the effects of Plaintiff's medication.

At the hearing, when the ALJ asked Plaintiff about any side-effects of the Oxycotin and Ultram that he is taking for pain. Plaintiff responded, "Drowsy. They make you kind of sleepy, lack of attention span."

Such subjective complaints must be considered in accordance with 20 C.F.R. § 404.1529, which requires a two-step process for evaluating subjective symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment or impairments established by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the individual's symptoms. 61 Fed. Reg. 34483. Second, if such underlying physical or mental impairment or impairments have been found, the ALJ must evaluate the intensity, persistence and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Id.*

In order to make these determinations, the ALJ must make a finding in regard to the credibility of the individual's testimony and statement based upon his evaluation of the entire case record. Any allegation of diminishment of the Plaintiff's capacity for basic work activities must be supported by the objective medical evidence and other evidence in the case record.

When determining credibility, in addition to the objective medical evidence, the ALJ must also consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations

7

and restrictions due to the pain. 20 C.F.R. § 404.1529 (c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

An ALJ's credibility determinations about a claimant "are to be given great weight 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (citations omitted). In determining the credibility of the claimant, the court must consider the whole record. 61 Fed. Reg. 34483-86. Furthermore, the ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 61 Fed. Reg. 34483, 34486.[1]

Here, although the ALJ failed to fully address factor the fourth factor listed above—the side effect portion of the "type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms factor"—the ALJ's credibility determination is supported by substantial evidence. The ALJ gave several specific reasons for casting doubt on the extent of Plaintiff's subjective complaints, including the conservative nature of his treatment, his ability to perform daily activities, his treating physician's note that his pain "is tolerable as long as he takes his medications," and his three month stint as a landscaper as recent as 2002. (Tr. 19).

"Importantly, while the ALJ should consider these factors, he is not required to significantly analyze any of them." *Ahee v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 72591 ( E.D. Mich.

---

[1] Plaintiff cites *Lugo v. Apfel*, 20 F. Supp. 2d 662 (S.D.N.Y. 1998) in support of his claim. In *Lugo*, the court noted that "if the ALJ decides to reject subjective testimony concerning pain and other symptoms, she must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [her] determination is supported by substantial evidence." 20 F. Supp. 2d at 663 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

Sept. 22, 2008) (citing *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989); *Welch v. Comm'r of Soc. Sec.*, No. 00-10327, 2003 U.S. Dist. LEXIS 18652, *14 (E.D. Mich. 2003) ("The ALJ did not deal in depth with each of these factors; however, he is not required to do so.")).

Moreover, as noted by Magistrate Judge Hluchaniuk, the record is devoid of any instances where Plaintiff complained of drowsiness or sleepiness as a side effect to any physician. In fact, on his disability report, Plaintiff only complained of nausea as a side effect of his medications. (Tr. 67). Plaintiff's failure to provide objective medical evidence of his complained drowsiness or any evidence of him having complained of this side effect is fatal to his argument. *See, e.g.*, *Daniels v. Comm'r of Soc. Sec.*, No. 1-07-cv-528, 2008 U.S. Dist. LEXIS 90636, at *21 (W.D. Mich. July 29, 2008) (citing *Farhat v. Sec'y of Health and Human Servs.*, No. 91-1925, 1992 U.S. App. LEXIS 18401, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992); *McKenzie v. Comm'r*, No. 99-3400, 2000 U.S. App. LEXIS 11791, *10 n.3 (6th Cir. 2000) ("Plaintiff contends that the ALJ did not properly consider the side effects of his medication . . . . Plaintiff asserts that because the Physicians Desk Reference includes drowsiness and dizziness as possible side effects of Darvocet and Somathe[,] medications Plaintiff is taking for his back, the ALJ was required to find that he was disabled. However . . . Plaintiff's treating physician, noted that Plaintiff did not experience any adverse side effects as a result of the medication. Moreover, the record does not show Plaintiff ever having complained of side effects to any other physicians who examined him. Therefore . . . Plaintiff's claim is without merit.").

### 4.   Flare-Ups

Finally, contrary to Plaintiff's assertion, the ALJ did make a finding of how frequent Plaintiff's condition flared. The ALJ specifically noted that

> [Plaintiff] described flare-ups occurring every two to three weeks and lasting three

> to seven days at a time. He states that he spends about three days in bed about two times per month. He complains that his pain limits him to standing and walking for no more than ten minutes and lifting or carrying no more than ten pounds. There are abnormal medical signs, yet the findings and medical treatment do not support claimant's reported limitations.

After describing Plaintiff's flare-ups, the ALJ pointed to the conservative nature of Plaintiff's treatment, noting that although Plaintiff has been seen on a regular basis, his visits have been mainly to renew or refill his medications. The Court is not persuaded by Plaintiff's argument that the ALJ's determination regarding his alleged flare-ups was not supported by substantial evidence.

### III.   CONCLUSION

For these reasons, the Court:

(1)   **ADOPTS** the Magistrate Judges's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

(2)   **DENIES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 19); and

(3)   **DISMISSES** the action **WITH PREJUDICE**.

**SO ORDERED.**

                                                          s/Paul D. Borman
                                                          PAUL D. BORMAN
                                                          UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on

March 30, 2009.

                                              s/Denise Goodine
                                              Case Manager